UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, a corporation established pursuant to 12 U.S.C. § 1716 *et seq.*,<br><br>Plaintiff,<br><br>v.<br><br>EMPIRIAN AT RIVERFRONT, LLC, a Delaware limited liability company, and AINTSAR RIVERFRONT LLC, a Delaware limited liability company, EZRA BEYMAN, an individual, and MAYER STEG, an individual,<br><br>Defendants. | Case No. 11-14119<br><br>Hon. |

### VERIFIED COMPLAINT FOR ENFORCEMENT OF MORTGAGE, INCLUDING ASSIGNMENT OF RENTS, AND APPOINTMENT OF RECEIVER AND OTHER RELIEF

Plaintiff Federal National Mortgage Association ("Fannie Mae"), by its attorneys, Foley & Lardner LLP, for its verified complaint (see Verification of Patrick Bianca, attached as <u>Exhibit A</u>), alleges:

### PARTIES

1.   Fannie Mae is a corporation organized and existing under the laws of the United States, with its principal place of business in Washington, D.C. Fannie Mae is deemed to be a District of Columbia corporation and citizen. 12 U.S.C. § 1717(a)(2)(B).

**Defendant Empirian**

2.  Defendant Empirian at Riverfront, LLC ("Empirian") is a Delaware limited liability company that maintains its principal place of business at 25 Philips Parkway, Montvale, New Jersey 07645.

3.  Empirian consists of a single member, Riverfront Group, LLC, which is a Michigan limited liability company that maintains its principal place of business at One Riverfront Plaza, 55 Campau Avenue NW, Suite 1, Grand Rapids, Michigan 49503.

4.  Riverfront Group, LLC, in turn consists of two members: Empire Group Holdings, LLC, and Riverfront Group MM, Inc.

5.  Empire Group Holdings, LLC, is a Delaware limited liability company.

6.  Riverfront Group MM, Inc., is a Delaware corporation that maintains its principal place of business at 25 Philips Parkway, Montvale, New Jersey 07645.

7.  Empire Group Holdings, LLC's sole member is Empire American Holdings, LLC.

8.  Empire American Holdings, LLC is a Delaware limited liability company.

9.  Empire American Holdings, LLC, has two members: Ezra Beyman and EAH MM, Inc.

10. Ezra Beyman is an individual who, upon information and belief, is a citizen of New Jersey.

11. EAH MM, Inc., is a Delaware corporation that maintains its principal place of business at 25 Philips Parkway, Montvale, New Jersey 07645.

12. Thus, for purposes of this Complaint, Empirian is a citizen of New Jersey and Delaware.

### Defendant Aintsar

13. Defendant Aintsar Riverfront, LLC ("Aintsar" and, collectively with Empirian, the "Borrower") is a Delaware limited liability company that maintains its principal place of business at 25 Philips Parkway, Montvale, New Jersey 07645.

14. Aintsar's sole member is Aintsar Realty Corp.

15. Aintsar Realty Corp. is a New York corporation that maintains its principal place of business at 10 Lenore Avenue, Monsey, New York 10952.

16. Thus, for purposes of this Complaint, Aintsar is a citizen of New York.

### Defendant Beyman

17. Defendant Ezra Beyman ("Beyman") is an individual who, upon information and belief, is a citizen of New Jersey.

### Defendant Steg

18. Defendant Mayer Steg ("Steg") is an individual who, upon information and belief, is a citizen of New York.

### JURISDICTION AND VENUE

19. The Court has jurisdiction over this matter under 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because, as demonstrated above, the parties are citizens of different states. Additionally, Fannie Mae seeks equitable relief in the form of a receiver and for injunctive relief.

20. Venue is proper in this Court under 28 U.S.C. § 1391 because the subject matter of this Complaint is situated in this District, and because Fannie Mae requests the appointment of a receiver to operate a multi-family real estate complex located at 100 Riverfront Drive, Detroit,

Michigan 48226, commonly known as the Riverfront Towers Apartments, as more particularly described in <u>Exhibit B</u> (the "Property"), on which Fannie Mae holds a mortgage.

## GENERAL ALLEGATIONS

21. On or about May 9, 2007, Arbor Commercial Funding, LLC ("Arbor") made several loans to limited liability companies organized by and whose general partner is Empirian Lexford GP 9 LLC. Empirian Lexford GP 9 LLC's sole member is Ezra Beyman. These loans were part of an approximately $300 million dollar loan portfolio, with each loan secured by one or more multi-family real estate properties.

22. On or about June 27, 2008, Arbor Commercial Funding, LLC ("Arbor") made a loan in the original principal amount of $55,000,000.00 (the "Loan") to Borrower.

23. The Loan is evidenced by a promissory note and secured by a mortgage.

24. Borrower has defaulted on its obligations under the note, mortgages and other loan documents.

25. This is an action to, among other things, appoint a receiver with respect to the Property and to enforce the covenants in the parties' contract.

26. Borrower expressly consented in the mortgage to the *ex parte* appointment of a receiver by the court in the event of default. The mortgage states in relevant part as follows:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument**, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law.**

Ex. D, § 3(d) (emphasis added).

**The Riverfront Towers Mortgage**

27. Borrower's indebtedness under the Loan was evidenced by a Multifamily Note dated June 27, 2008 (the "Note"). A copy of the Note is attached as <u>Exhibit C</u>.

28. To secure repayment of the indebtedness evidenced in the Note and performance of all covenants and conditions contained therein, Borrower also executed a Mortgage dated June 27, 2008 (the "Mortgage") in the amount of $55,000,000.00, which was duly recorded on July 2, 2008, at Liber 47325, Pages 726-787, Document No. 208249881 in the Office of the Register of Deeds for the County of Wayne, Michigan. A copy of the Mortgage is attached as <u>Exhibit D</u>.

29. Borrower also assigned to Arbor all of Borrower's right, title and interest in and to all rents, issues and profits that may arise or be had from the Property, and other property rights, interests and estates, as more particularly set out in the Mortgage. *See* Ex. D, § 3(a). This provision states in relevant part as follows:

> As part of the consideration for the Indebtedness, **Borrower absolutely and unconditionally assigns and transfers to Lender all Rents**. **It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower**. Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the "Mortgaged Property," as that term is defined in Section 1(s). However, if this present absolute and unconditional assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of the Borrower that in this circumstance this Instrument

5

>     create and perfect a lien on Rents in favor of Lender, which lien
>     shall be effective as of the date of this Instrument.

Ex. D, § 3(c) (emphasis added).

30. To secure payment and the performance of all covenants, conditions, and agreements under the Note, Borrower also made, executed, and delivered to Arbor a Replacement Reserve and Security Agreement ("Reserve Agreement") dated June 27, 2008, wherein Borrower agreed to make certain deposits with Arbor as additional security for its obligations under the Note.

31. The Mortgage also grants a security interest in all supplies, equipment, furniture, furnishings, fixtures, goods, inventory and personal property owned by Borrower or used in connection with the real property and buildings on the real property, as well as all leases and rents. Such security interest has been perfected by the Financing Statement between Borrower and Fannie Mae, as recorded in the Office of the Register of Deeds for the County of Wayne, Michigan on July 2, 2009, in Liber 47325, Page 797.

32. On June 27, 2008, Arbor assigned its interest in the Loan and the Loan Documents (as defined below) to Plaintiff, by delivering to Plaintiff an Assignment of Mortgage ("Mortgage Assignment"). The Mortgage Assignment was duly recorded on July 2, 2008, at Liber 47325, Pages 788-95, Document No. 208249882 in the Office of the Register of Deeds for the County of Wayne, Michigan. A copy of the Mortgage Assignment is attached as <u>Exhibit E</u>.

33. To further memorialize the assignment of the Loan Documents to Fannie Mae, Arbor delivered to Fannie Mae an Assignment of Collateral Agreements and Other Loan Documents dated June 27, 2008 (the "Collateral Assignment"). A copy of the Collateral Assignment is attached as <u>Exhibit F</u>.

34. On August 1, 2010, Borrower executed and delivered to Fannie Mae an Allonge and Amendment to Multifamily Note (the "Note Amendment"). A copy of the Note Amendment is attached as Exhibit G.

35. Also on August 1, 2010, Borrower executed and delivered to Fannie Mae a First Amendment to Mortgage (the "Mortgage Amendment"). The Mortgage Amendment was duly recorded on July 15, 2011, at Liber 49278, Pages 269-282, Document No. 85411 in the Office of the Register of Deeds for the County of Wayne, Michigan. A copy of the Mortgage Amendment is attached as Exhibit H.

36. Hereinafter, the Note, Mortgage, Mortgage Assignment, Collateral Assignment, Note Amendment and Mortgage Amendment are referred to collectively, where appropriate, as the "Loan Documents."

**Guaranties**

37. To further secure the repayment of the indebtedness evidenced by the Note and performance of all covenants and conditions contained therein, Beyman executed and delivered to Arbor a Guaranty dated June 27, 2008 (the "Beyman Guaranty"), pursuant to which Beyman, among other things, guaranteed the repayment, upon an event of default, of a portion of the indebtedness equal to $3,500,000.00. A copy of the Beyman Guaranty is attached as Exhibit I.

38. To further secure the repayment of the indebtedness evidenced by the Note and performance of all covenants and conditions contained therein, Beyman and Steg executed and delivered to Arbor an Exceptions to Limited Recourse Guaranty dated June 27, 2008 (the "Key Principal Guaranty"), pursuant to which Beyman and Steg, among other things, jointly and severally guaranteed the payment of all amounts for which Borrower is personally liable under paragraph 9 of the Note. A copy of the Key Principal Guaranty is attached as Exhibit J. (The

7

Beyman Guaranty and the Key Principal Guaranty are hereinafter referred to collectively at the "Guaranties").

## Borrower's Default Under the Loan Documents

39. Under the terms and conditions of the Loan Documents, an Event of Default occurs if Borrower fails to make monthly principal or interest payments as provided in the Note on or before the date such payment is due.

40. Borrower has defaulted under the terms and conditions of the Loan Documents, including with respect to transfers and liens on the Property and by failing to pay amounts owed under the Note; specifically, by failing to make monthly principal and interest payments due on August 1, 2011.

41. Borrower's action in failing to make the August principal and interest payment is to gain leverage over Fannie Mae in protracted negotiations with Borrower regarding the Mortgage.

42. Under the Note and Mortgage, Fannie Mae accelerated the entire indebtedness owed thereon by a demand letter dated August 15, 2011. A copy of the demand letter is attached as Exhibit K.

43. The unpaid principal balance as of September 2, 2011, is $55,000,000.00 and interest has accrued on said unpaid principal in the amount of $822,143.06 through September 2, 2011. The total amount due as principal and interest, along with reserves, late fees, prepayment penalties and other charges, as of September 2, 2011, is $69,565,547.77. Interest continues to accrue at the rate of $9,945.83 per day. Default interest continues to accrue at the rate of $6,111.11 per day. In addition, Borrower is liable for attorney's fees and costs in the amount of at least $75.00.

8

44. Under the Mortgage, Borrower's license to collect rents has terminated, and, therefore, Fannie Mae has instructed Borrower to hold all rents received in trust for Fannie Mae. Ex. D, § 3(b); Ex. K. The Mortgage states in relevant part:

> After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender, and Borrower shall, upon Borrower's receipt of any Rents from any sources (including, but not limited to subsidy payments under any Housing Assistance Payments Contract), pay the total amount of such receipts to the Lender. **However, until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Instrument. From and after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall without notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid.** Borrower shall pay to Lender upon demand all Rents to which Lender is entitled. At any time on or after the date of Lender's demand for Rents, Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender, no tenant shall be obligated to inquire further as to the occurrence of continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each

9

               rental unit. Borrower shall not interfere with and shall cooperate with Lender's collection of such Rents.

Ex. D, § 3(b) (emphasis added).

       45.     Under the Mortgage, upon an Event of Default by Borrower, Fannie Mae is entitled to, among other things, to take possession of the Property and to collect all rents and income from the Property as they become due. Ex. D, § 3(d).

      46.     Borrower agreed in the Mortgage to the appointment of a receiver upon an Event of Default, which is defined in the Mortgage to include the failure to pay any amount as and when due under the Loan Documents. Ex. D, §§ 3(d), 22(a).

      47.     In particular, Section 3(d) of the Mortgage states, in relevant part, as follows:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, **expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law.**

Ex. D, § 3(d) (emphasis added).

      48.     Borrower has failed to make payments as required by the Loan Documents and, therefore, is in default of the Note and the Mortgage.

      49.     The instant Complaint is not an action or proceeding to recover the debt secured by the Mortgage or any part of the Mortgage. M.C.L.A. § 600.3204(1)(b).

      50.     Fannie Mae seeks appointment of a receiver in connection with its claim for Borrower's breaches of contract, including breaches of the covenants in the Mortgage, and in order to preserve and protect the subject Property.

51. Borrower has failed to make its payment as required by the Loan Documents and, therefore, is in default of the Note and the Mortgage, and a receiver should be appointed.

### Default Of The Guaranties

52. Beyman has failed to make payment as required by the Beyman Guaranty.

53. Beyman has failed to make payment as required by the Key Principal Guaranty.

54. Steg has failed to make payment as required by the Key Principal Guaranty.

55. Therefore, Beyman and Steg are in breach of the Guaranties.

### Fannie Mae's Damages

56. Because Borrower has failed and refused to fulfill its obligations under the Note and Mortgage, Fannie Mae is concerned that Borrower will fail to maintain the Property securing its obligations to Fannie Mae while the foreclosure by advertising is pending.

57. The Property is a multi-family residential real estate complex, and Fannie Mae is justifiably concerned that the Property is not being adequately managed and maintained and that the health and well-being of is residents could be at risk.

58. Moreover, there are maintenance and repair issues with the Property that constitute waste and require the appointment of a receiver. For instance, a recent inspection has identified immediate Life/Safety issues that need immediate attention.  This includes an estimated $27,500 for performing required annual inspections and servicing of fire alarm systems, automatic fire sprinkler systems, and the emergency backup power diesel generator. The inspection further identified other items needing repair, recommended to be completed within the next six months, to include repairs to the storm drain, parking structure, roofs, and elevator controls, among others.

59. Fannie Mae is entitled to the appointment of a receiver to, among other things, safeguard and preserve rents and profits derived from the Property, and use such to preserve and maintain its collateral consistent with the Loan Documents.

60. If a receiver is not appointed, Fannie Mae's right to recover rental income and to presently enforce the covenants will be forever lost.  It is inequitable to allow Borrower to collect and divert the rent money that it is contractually obligated to repay when it has failed to fulfill its obligations under the Loan Documents.

61. Upon information and belief, the tenant rents for the Property are due monthly.

62. Fannie Mae will suffer immediate and irreparable loss unless a receiver is appointed because it cannot otherwise preserve and protect its collateral and efficiently enforce the covenants in the Mortgage.

### COUNT I – BREACH OF CONTRACT, ENFORCEMENT OF MORTGAGE (INCLUDING ASSIGNMENT OF RENTS AND APPOINTMENT OF RECEIVER)

63. Fannie Mae incorporates the preceding allegations as though fully set forth herein.

64. The Mortgage provides at Section 3(d) that in the event of default, Fannie Mae can apply to a court for the appointment of a receiver of the Property to collect rents and profits and preserve the value of the Property.

65. As demonstrated above, Borrower unambiguously consented to the appointment of a receiver in the event it defaulted on its obligations under the Loan Documents.

66. Borrower is in default of and has breached the covenants in the Loan Documents.

67. Fannie Mae is also entitled to a receiver, for among other reasons, under M.C.L.A. § 554.231 which allows for the appointment of a receiver when a mortgage contains an assignment of rents clause if the borrower defaults. *See Smith v. Mutual Benefit Life Ins. Co.*, 362 Mich. 114, 125; 106 N.W.2d 515 (Mich. 1960).

68. Furthermore, unless a receiver is appointed immediately by this Court to take possession and control of the Property (which is collateral for a loan with an unpaid principal balance of $55,000,000.00), Fannie Mae will have no effective and/or efficient means to enforce the covenants and the assignment of rents and leases provisions of the Mortgage and/or to insure that taxes, insurance, utilities and other expenses for the Property are paid.

69. Fannie Mae will suffer immediate and irreparable loss unless a receiver is appointed because it cannot otherwise preserve and protect its collateral and efficiently enforce the covenants in the Mortgage.

70. Fannie Mae seeks relief as set forth herein.

## COUNT II – PRELIMINARY INJUNCTION

71. Fannie Mae incorporates the preceding allegations as though fully set forth herein.

72. Upon information and belief, Borrower is in complete control of the Property.

73. Borrower's failure to fulfill its obligations to Fannie Mae is a breach of the terms of the Loan Documents.

74. The entry of a preliminary injunction is necessary to protect and preserve Fannie Mae's interest in the Property (as well as the revenues, profits and income from the Property), and the personal property on which it has a lien, and to permit it to enforce its rights under the Loan Documents. Furthermore, entry of a preliminary injunction is necessary in order to avoid irreparable harm and waste to the Property.

75. Fannie Mae is likely to succeed on the merits of its claims against Borrower.

76. Fannie Mae will suffer irreparable injury in the absence of a temporary restraining order and preliminary injunction that enjoins Borrower from transferring, disposing of, or concealing any part of the collateral.

77. The balance of hardships and the public interest favor issuing a temporary restraining order and preliminary injunction in this case.

78. Fannie Mae seeks relief as set forth herein.

## COUNT III – BREACH OF THE GUARANTIES

79. Fannie Mae incorporates the preceding allegations as though fully set forth herein.

80. The Guaranties are valid and enforceable contracts.

81. In consideration of the Loan and in order to induce Arbor to make the Loan, Steg and Beyman executed and delivered to Arbor the Guaranties.

82. Pursuant to the terms of the Guaranties, Steg and Beyman guaranteed to Arbor, among other things, that they would unconditionally guarantee the full and prompt payment when due of all of the obligations of Borrower, due and owing to Arbor under the terms of the Guaranties.

83. The Guaranties remain in full force for as long as the debt remains unpaid.

84. Borrower has not repaid the Loan.

85. Steg and Beyman have not repaid the Loan.

86. Steg and Beyman have not repaid the amount due and owing under the Guaranties.

87. Beyman has breached the Beyman Guaranty.

88. Beyman has breached the Key Principal Guaranty.

89. Steg has breached the Key Principal Guaranty.

90. All conditions precedent have been performed or have occurred.

91. As a result of Beyman's and Steg's breaches of the Guaranties, Fannie Mae by virtue of the Mortgage Assignment has been damaged in an amount not less than $75,000.00, exclusive of interest, costs, and attorney fees.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

a. A Judgment in favor of Fannie Mae and against Defendants on Counts I and II, and entry of a preliminary injunction against Borrower and its agents, employees and members (as well as any other persons with knowledge of this Court's order) barring them from transferring, expending, distributing, concealing, destroying, damaging or otherwise diminishing the Property or any part thereof or any personal property on which Fannie Mae has a lien, or any proceeds of the same, including rents, profits and revenues, until a receiver is appointed;

b. An order appointing Ron Glass of GlassRatner Management as the receiver of the Property during the pendency of this action to take charge of the Property, to operate, manage, and conserve the Property, to collect rents, issues, and profits, to find tenants and lease the premises, to insure the Property against loss by fire or otherwise, to make necessary repairs to the Property, to pay the taxes that have been, or may be, levied against the Property, to market the property for sale, and to have and perform all the other usual powers and duties of a receiver in similar cases;

c. An order requiring all persons who have possession or control of the Property (other than lawful tenants) to yield and deliver possession of same to the receiver appointed by this Court;

d. A Judgment in favor of Fannie Mae and against Defendants Steg and Beyman on Count III, and entry of an order against Steg and Beyman in the amount due to Fannie Mae under the Guaranties, together with Fannie Mae's expenses, reasonable attorneys' fees, and other costs sustained in this action; and

e. Such other and further relief as this Court deems just and proper.

        Respectfully submitted,

        **FOLEY & LARDNER LLP**


        /s/ Ann Marie Uetz_____
        Ann Marie Uetz (P48922)
        Jeffrey S. Kopp (P59485)
        Adam J. Wienner (P71768)
        500 Woodward Ave., Suite 2600
        Detroit, Michigan 48226
        Telephone (313) 234-7140
        Facsimile (313) 234-2800
Dated: September 21, 2011        *Attorneys for Plaintiff*